*In re* APPLICATION OF INTERNATIONAL
TRANSMISSION COMPANY

Docket No. 317798. Submitted March 4, 2014, at Detroit. Decided
March 13, 2014, at 9:05 a.m. Leave to appeal denied, 496 Mich
___.

International Transmission Company (ITC) brought a condemna-
tion action in the Sanilac Circuit Court, seeking to modify an
easement across property owned by the Arlie D. Murdock Revo-
cable Living Trust to construct a transmission line for wind energy
produced in Michigan's Thumb region. In February 2011, the
Public Service Commission (PSC) had issued an order in Case No.
U-16200 granting ITC an expedited siting certificate for a trans-
mission route across Murdock Trust's property, but thereafter a
wind turbine was constructed on the trust's property in the path of
the approved route, leading ITC to seek a modification of the
route's placement. Murdock Trust moved for summary disposi-
tion, and ITC moved for a stay of proceedings on the ground that
the PSC had primary jurisdiction over the matter. The court,
Donald A. Teeple, J., granted ITC's motion on that basis, and ITC
moved the PSC for a clarification of its 2011 order and for ex parte
relief. Murdock Trust moved to intervene, objecting to the location
and scope of the proposed modification. The PSC granted the
motion to intervene, and ultimately ruled that ITC's proposed
modification was within the scope of the minor adjustments
contemplated by the February 2011 order. Murdock Trust ap-
pealed.

The Court of Appeals *held*:

1. Murdock Trust's unpreserved argument that the notice it
received about ITC's application was constitutionally defective
was not supported by a showing of plain error affecting its
substantial rights. Murdock Trust conceded that the notice com-
plied with MCL 460.1153(1), it received actual notice about ITC's
intention to deviate from the proposed route, and it did not assert
that a failure of notice put it at an unfair disadvantage.

2. The PSC had subject-matter jurisdiction over the matter
in controversy and properly acted pursuant to the circuit court's
request that it exercise primary jurisdiction in this case. The
proper means for Murdock Trust to challenge the circuit court's

determination that the PSC had primary jurisdiction would have been an interlocutory appeal from the circuit court's decision.

3. The PSC was not obligated by statute or administrative rule to open a new contested case to address ITC's proposed route modification, and it did not abuse its discretion by failing to do so in this instance. Further, the PSC did not abuse its discretion by ruling that the proposed modification was within the scope of the minor adjustments allowed for in the initial order.

4. The PSC did not impermissibly delegate legislative authority to ITC by allowing ITC to modify the approved route because the initial order expressly contemplated minor revisions in the route and the order at issue did not give ITC the authority to deviate from the approved route to whatever extent it wished.

Affirmed.

ADMINISTRATIVE LAW — PUBLIC SERVICE COMMISSION — CONTESTED CASES — EXPEDITED SITING CERTIFICATES FOR TRANSMISSION LINES — ROUTE MODIFICATIONS.

The Public Service Commission is not obligated by statute to open a new contested case to address a proposed modification to a transmission line route authorized by an expedited siting certificate if the modification was contemplated in the order that granted the certificate following a contested case proceeding.

*Howard & Howard Attorneys PLLC* (by *Rodger A. Kershner*, *Jon D. Kreucher*, and *Miles T. Macik*) for the Arlie D. Murdock Revocable Living Trust.

*Dykema Gossett PLLC* (by *Albert Ernst*, *Gary P. Gordon*, and *Shaun M. Johnson*) for the International Transmission Company.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Steven D. Hughey* and *Lauren D. Donofrio*, Assistant Attorneys General, for the Public Service Commission.

Before: SERVITTO, P.J., and SAWYER and BOONSTRA, JJ.

BOONSTRA, J. Intervenor-Appellant Arlie D. Murdock Revocable Living Trust (Murdock Trust) appeals as of right the July 29, 2013 order of the Michigan Public Service Commission (PSC) approving petitioner-appellee International Transmission Company's (ITC) proposed modification of an approved route over Murdock Trust's land to accommodate a transmission line. We affirm.

### I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from ITC's proposed modification of an approved route obtained as part of the construction, operation, and maintenance of a 140-mile-long, double-circuit, 345,000-volt transmission line (the "Thumb Loop Project"). ITC's project is subject to the Clean, Renewable, and Efficient Energy Act, MCL 460.1001 *et seq.*, which 2008 PA 295 added to the Customer Choice and Electricity Reliability Act, MCL 460.10 *et seq.* MCL 460.1001(2) announces the legislative purpose of promoting "the development of clean energy, renewable energy, and energy optimization," the diversification of the resources used to meet the state's energy needs, the use of indigenous energy resources, private investment in renewable energy and energy efficiency, and improved air quality. MCL 460.1149(1) allows the PSC to issue an expedited siting certificate for a transmission line to an independent transmission company. MCL 460.1153(1) and (2) call for notice to affected landowners and for a contested case to be conducted on the application. MCL 460.1153(4) provides that the PSC's decision on these applications overrides local codes and ordinances. MCL 460.1153(5) states that an expedited siting certificate is "conclusive and binding as to the public convenience and necessity for that transmission line and its compatibility with the public health

and safety or any zoning or land use requirements in effect when the application was filed" for purposes of any attendant eminent domain proceedings.

The Thumb Loop Project is being constructed to transmit energy generated from wind power. The transmission route that ITC initially proposed forms a loop that begins just north of Frankenmuth, runs northeast through Tuscola and Huron Counties, loops around the north side of Bad Axe, and runs south through Sanilac and St. Clair Counties. On February 25, 2011, over the objections of various intervenors, the PSC issued an order approving ITC's proposed route for the Thumb Loop Project and granting an expedited siting certificate for it. That decision is not the subject of the instant appeal, inasmuch as it was affirmed in an earlier appeal to this Court.[1]

Sometime after that order was issued, a wind turbine was constructed on Murdock Trust's property in the path of the approved route. ITC determined that the route would need to be modified to allow for the turbine. However, the parties were unable to agree on a modification of the route. On February 8, 2013, ITC brought a condemnation action against Murdock Trust in Sanilac County Circuit Court, seeking an easement across Murdock Trust's property. Murdock Trust moved the circuit court for summary disposition; ITC

---

[1] This Court affirmed the PSC's approval, but held that the PSC erred by deeming the siting certificate itself to also function as a construction permit. *In re Application of Int'l Transmission Co for Expedited Siting Certificate*, 298 Mich App 338, 343; 827 NW2d 385 (2012). Our Supreme Court, in lieu of granting leave to appeal, reversed this Court's decision in part and declared that a siting certificate does indeed constitute a construction permit, but otherwise denied leave to appeal. *In re Application of Int'l Transmission Co for Expedited Siting Certificate*, 493 Mich 947 (2013). The latter order thus restored the PSC's decision to full effect and closed the case.

moved for a stay of proceedings in the circuit court based on the primary jurisdiction of the PSC. The circuit court granted the motion to stay the proceedings, and the parties proceeded before the PSC. On April 23, 2013, ITC filed with the PSC a motion for clarification of the February 25, 2011 order and a request for ex parte relief, or, alternatively, immediate consideration of its motion. The basis for the motion was ITC's decision to modify the route to allow for the turbine.

Murdock Trust raised no objections to the route across its land as originally proposed, but the day after ITC moved for clarification and ex parte relief, Murdock Trust petitioned to intervene out of time in response to ITC's plan to change the location of the route. According to the application to intervene, the original route for the transmission line "was to be placed on the far west side of Landowner's primary parcel, such that the full 200 foot width of the easement would not be entirely placed on Landowner's parcel," and "ITC's originally-proposed occupation of Landowner's parcel in question was . . . expected to amount to approximately 9 acres," but "[t]he materially-altered centerline route change just now requested by ITC would divide Landowner's primary parcel in two, increase the distance traversed across the parcel, . . . cut the distance between the high voltage line and a house on the parcel by almost one-half, and . . . increase the number of acres that would be taken to over 13 acres." The PSC granted Murdock Trust's motion to intervene.

The PSC, in later approving the requested modification of the route, held as follows:

> ITC's proposed adjustment to the route is no greater than 700 feet at its widest, results in a line that is considerably shorter than the approved line on the Trust's property, and

avoids the necessity of cutting a 200-foot swath through a large stand of trees on the Trust's property. . . . The adjusted route remains on cropland, and remains on the parcel that would have hosted the approved route (but avoids the adjacent treed parcel that was affected by the approved route). Finally, the adjusted route does not cross the property of any landowner that did not receive notice of this proceeding. In sum, the adjustment facilitates the delivery of wind power and is relatively narrow; and the adjusted route remains with the same landowner, affects the same type of land, and runs over the same parcel as the approved route.

Accordingly, the PSC concluded that "the route adjustment proposed by ITC is within the scope of minor adjustments contemplated by the February 25 order," issued an order to that effect on July 29, 2013, and thus approved the modified route as proposed by ITC. This appeal followed. On September 27, 2013, this Court granted ITC's motion to expedite this appeal.[2]

II. NOTICE

Murdock Trust argues that the notice provided to it (in 2010) pursuant to MCL 460.1153(1) was constitutionally defective, because the notice did not provide a map of proposed or alternate routes or state that the route might subsequently be altered by ITC. Further, Murdock Trust argues that recipients of the notice were given only a week to sift through hundreds of pages of documents to ascertain whether their parcels would be affected, and to seek intervention. We disagree.

Murdock Trust made only cursory reference to this issue in a footnote to its initial trial brief before the PSC. There is no indication that Murdock Trust actu-

---

[2] *In re Application of Int'l Transmission Co for Expedited Siting Certificate,* unpublished order of the Court of Appeals, entered September 27, 2013 (Docket No. 317798).

ally made this argument to the PSC or that the PSC considered it in making its decision. The purposes of preservation requirements include encouraging parties to give the trial tribunal the opportunity to make the correct decision. See *Napier v Jacobs*, 429 Mich 222, 228-229; 414 NW2d 862 (1987). In this case, the footnote in Murdock Trust's brief did not call for a decision or otherwise challenge the propriety of past or present proceedings, nor did it invoke constitutional due process. Therefore, we deem this issue to be unpreserved. Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).

MCL 460.1153(1) provides:

> Upon applying for a certificate, an electric utility, affiliated transmission company, or independent transmission company shall give public notice in the manner and form the commission prescribes of an opportunity to comment on and participate in a contested case with respect to the application. Notice shall be published in a newspaper of general circulation in the relevant wind energy resource zone within a reasonable time period after an application is provided to the commission and shall be sent to each affected municipality, electric utility, affiliated transmission company, and independent transmission company and each affected landowner on whose property a portion of the proposed transmission line will be constructed. The notice shall be written in plain, nontechnical, and easily understood terms and shall contain a title that includes the name of the electric utility, affiliated transmission company, or independent transmission company and the words "Notice of Intent to Construct a Transmission Line to Serve a Wind Energy Resource Zone."

Murdock Trust concedes that the notices provided to the affected landowners in this case "appear to comply with the legislative requirements of MCL 460.1153(1)."

However, Murdock Trust now argues for the first time that the lack of additional information renders the notice constitutionally deficient and denies Murdock Trust due process of law. See US Const, Am XIV, § 1; Const 1963, art 1, § 17.

To satisfy the demands of due process, if notice is due, the " 'means employed must be such as one desirous of actually informing the [party in interest] might reasonably adopt to accomplish it[.]' " *Jones v Flowers*, 547 US 220, 229; 126 S Ct 1708; 164 L Ed 2d 415 (2006), quoting *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 315; 70 S Ct 652; 94 L Ed 865 (1950). Actual notice need not necessarily be achieved, but due process requires notice " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Jones*, 547 US at 226, quoting *Mullane*, 339 US at 314.

In this case, Murdock Trust, while pointing out alleged deficiencies in the notice provided to affected landowners as this case originally got underway, does not suggest that its failure to intervene before ITC's proposed modification was due to a lack of notice. Further, as discussed later in this opinion, it appears that Murdock Trust had sufficient actual notice of ITC's intention to deviate 700 feet from the approved route over Murdock Trust's land to participate in eminent domain proceedings in the circuit court, and to intervene in this case. Normally, if timely actual notice has been achieved, defects in how it was served are rendered harmless. See *In re Forfeiture of $109,901*, 210 Mich App 191, 198; 533 NW2d 328 (1995), and *In re Lee*, 282 Mich App 90, 99-100; 761 NW2d 432 (2009). Because Murdock Trust has not asserted, let alone proved, that some failure of notice put it at some unfair disad-

vantage, Murdock Trust is in no position to seek a judicial determination that minimal compliance with the notice requirements of the applicable statute has nonetheless failed to satisfy the demands of due process. See *In re RFF*, 242 Mich App 188, 205; 617 NW2d 745 (2000) ("Statutes are presumed to be constitutional and must be construed as such unless it is clearly apparent that the statute is unconstitutional."), and *Rinaldi v Civil Serv Comm*, 69 Mich App 58, 69; 244 NW2d 609 (1976) ("We will not undertake a constitutional analysis when we can avoid it.").

### III. JURISDICTIONAL CHALLENGES

Murdock Trust next argues that the PSC lacked subject-matter jurisdiction over the matter in controversy and that the PSC acted unreasonably in exercising its jurisdiction. We disagree.

A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, a party must show that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999).

The existence of subject-matter jurisdiction is a question of law that this Court reviews de novo. *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 708-709; 742 NW2d 399 (2007). Likewise, the "applicability of a legal doctrine is a question of law," calling for review de novo. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001).

In the instant case, the Sanilac County Circuit Court issued an order staying the condemnation action before it because the PSC had primary jurisdiction over issues

concerning the route of the transmission line. Murdock Trust argues that the PSC lacked the subject-matter jurisdiction to revisit its previous order approving ITC's route and that the circuit court erred by deferring to the PSC under the doctrine of primary jurisdiction.

### A. SUBJECT-MATTER JURISDICTION

The PSC possesses no authority beyond what the Legislature has granted it. *Consumers Power Co v Pub Serv Comm*, 460 Mich 148, 155; 596 NW2d 126 (1999). Authority must be granted by clear and unmistakable language. *Id*. at 155-156.

The February 25, 2011 order, in which the PSC approved ITC's proposed route and granted an expedited siting certificate for the Thumb Loop Project, included the statement, "The Commission reserves jurisdiction and may issue further orders as necessary." Then, in its order granting Murdock Trust's motion to intervene, and responding to the circuit court's "remand" in deference to its primary jurisdiction, the PSC invited briefing, affidavits, and exhibits in order that it might "determine whether the proposed route deviation is within ITC's authority under the February 25 order," and again announced that it was reserving jurisdiction and might issue further orders. However, the PSC cannot expand its jurisdiction through its own orders. See *York v Detroit (After Remand)*, 438 Mich 744, 767; 475 NW2d 346 (1991). Accordingly, although the PSC reserved jurisdiction in the two orders that preceded the one from which this appeal is taken, those reservations remain limited to the PSC's statutorily granted powers.

MCL 460.1149(2) states that "[a]n . . . independent transmission company may apply to the commission for an expedited siting certificate." MCL 460.1153(2) di-

rects the PSC to "conduct a proceeding on the application for an expedited siting certificate as a contested case[.]" MCL 460.1153(3) sets forth criteria for granting an expedited siting certificate, and MCL 460.1153(6) allows the PSC "a maximum of 180 days to grant or deny an expedited siting certificate under this section."[3] MCL 460.1159(2) states that "[i]n administering this part, the commission has only those powers and duties granted to the commission under this part."

It is undisputed that the PSC was empowered to decide ITC's application for an expedited siting certificate, including whether to approve a proposed route for the transmission line. Murdock Trust argued in its petition to intervene that the PSC had completed its statutory task when it issued the expedited siting certificate, and was thus "without jurisdiction to 'clarify' an Order where ITC's Application never requested the authority to make post-Order changes in the centerline . . . ." The issue thus becomes whether—more than two years after issuing an order approving a transmission line route for the Thumb Loop Project that was subsequently affirmed in the appellate process—the PSC had jurisdiction to adjudicate as

---

[3] Murdock Trust makes much ado about the statutory requirement to rule on a request for an expedited siting certificate within 180 days. This requirement reflects only the Legislature's desire for expeditious action on such requests, not an intention to cut off all authority in the matter once that period has expired. It would be anomalous if the PSC required 179 days to reach a decision but was then deemed stripped of authority to entertain a meritorious postdecision motion, e.g., one for rehearing, raised a few days later, given that, in general, the authority to decide such postdecision motions inheres in the authority to make the initial decision. See *Ewing v Bolden*, 194 Mich App 95, 101; 486 NW2d 96 (1992) ("Any subsequent action based on the original judgment, even if brought pursuant to a new complaint, is deemed to be a continuation of the original action so that jurisdiction is proper in the court that rendered the original judgment.").

it did the disagreement that arose between Murdock Trust and ITC concerning the latter's wish to deviate from the approved route by up to 700 feet in order to accommodate a wind turbine that had been placed in the path of the route as originally proposed and approved.

This Court has distinguished the question of the existence of the PSC's subject-matter jurisdiction over a controversy from the question whether the PSC properly exercised its subject-matter jurisdiction in a particular instance:

> Subject-matter jurisdiction concerns a body's abstract power to hear a case of the kind or character of the one pending, and is not dependent on the particular facts of the case. Subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint. If it is apparent from the allegations that the matter alleged is within the class of cases over which the body has power to act, then subject-matter jurisdiction exists. Any subsequent error in the proceedings amounts to error in the exercise of jurisdiction. The erroneous exercise of jurisdiction does not void a body's jurisdiction, but may be challenged . . . on direct appeal. [*In re Complaint of Pelland against Ameritech Mich*, 254 Mich App 675, 682-683; 658 NW2d 849 (2003) (citations omitted).]

In this case, Murdock Trust's challenge is not to the PSC's abstract authority to decide the particulars involved with an application for an expedited siting certificate, including what route the transmission line might cover, but instead is to the PSC's exercise of that jurisdiction by adjudicating a siting dispute between Murdock Trust and ITC by ostensibly clarifying its earlier final order in the matter after allowing Murdock Trust minimal procedural opportunities to make its case. We thus conclude that the PSC had subject-matter

jurisdiction over the dispute and that Murdock Trust's challenge relates to the proper *exercise* of that jurisdiction.

### B. PRIMARY JURISDICTION

The doctrine of primary jurisdiction comes into play when a court and an administrative agency have concurrent original subject-matter jurisdiction regarding a disputed issue. *Attorney General v Blue Cross Blue Shield of Mich*, 291 Mich App 64, 85; 810 NW2d 603 (2010).

Primary jurisdiction "does not involve jurisdiction in the technical sense, but it is a doctrine predicated on an attitude of judicial self-restraint and is applied when the court feels that the dispute should be handled by an administrative agency created by the legislature to deal with such problems." *Black's Law Dictionary* (6th ed), p 1191.

> There is no fixed formula, but there are several factors to consider in determining whether an administrative agency has primary jurisdiction over a dispute: (1) whether the matter falls within the agency's specialized knowledge, (2) whether the court would interfere with the uniform resolution of similar issues, and (3) whether the court would upset the regulatory scheme of the agency. [*City of Taylor v Detroit Edison Co*, 475 Mich 109, 122; 715 NW2d 28 (2006).]

Murdock Trust cites no authority for the proposition that, when a court invites an administrative agency to exercise primary jurisdiction over a matter, the agency is not entitled to rely on the court's determination in that regard but must instead consider anew whether the doctrine applies. As appellees note, this appeal is not the proper avenue through which to attack the circuit court's decision to defer to the PSC on the basis

of primary jurisdiction. If Murdock Trust had wished for appellate vindication of such a challenge, it should have sought leave in this Court for an interlocutory appeal from the circuit court's decision in that regard. See MCR 7.203(B)(1). Given the circuit court's unchallenged determination that the PSC had primary jurisdiction in this case, at issue now is not *that* the PSC acted on that determination, but rather *how* it did so. Therefore, we decline to hold that the PSC lacked jurisdiction over the matter at issue, and proceed to Murdock Trust's challenge to the exercise of that jurisdiction.

### IV. THE PSC'S DECISION

Murdock Trust argues that the PSC erred by failing to open a new contested case and to afford it "full contested case protections such as the right to conduct discovery," and therefore erred by modifying the approved route upon ITC's request for clarification of its previous order. Murdock Trust further argues that the PSC improperly delegated legislative siting authority to ITC by allowing ITC the power to deviate from the approved transmission line route. A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the party must show that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich at 427.

This Court reviews a trial court's interpretation of administrative rules de novo, as a question of law. *Aaronson v Lindsay & Hauer Int'l Ltd*, 235 Mich App 259, 270; 597 NW2d 227 (1999). It reviews the interpretation of court rules under the same stan-

dard. *St George Greek Orthodox Church v Laupmanis Assoc, PC*, 204 Mich App 278, 282; 514 NW2d 516 (1994).

In arguing that the PSC decided this case in violation of applicable rules, Murdock Trust directs this Court to MCR 7.208(A) (staying trial proceedings while an appeal is pending), Mich Admin Code, R 460.17403 (authorizing motions for rehearing), and Mich Admin Code, R 460.17401 (authorizing motions to reopen proceedings for further evidence). We hold that none of these rules applies to invalidate the PSC's July 29, 2013 order.

Generally, the PSC "in any proceeding which may now be pending before it or which shall hereafter be brought before it, shall have full power and authority to grant rehearings and to alter, amend or modify its findings and orders." MCL 460.351. As discussed earlier, the PSC did not err by acting on the circuit court's request that it exercise its primary jurisdiction for purposes of clarifying whether the 700-foot deviation in the Thumb Loop Project's transmission line route fell within the implied expectation in the order approving the route that minor adjustments would be required. Of course, in exercising its jurisdiction, the PSC was still obliged to do so in accord with pertinent statutes and other authority, including its own rules. See *Bohannon v Sheraton-Cadillac Hotel, Inc*, 3 Mich App 81, 82; 141 NW2d 722 (1966) ("[w]hen an administrative agency promulgates a rule for the benefit of litigants and then deprives a litigant of this right, it is a violation of . . . due process"), citing Const 1963, art 1, § 17.

We accordingly address the rules that Murdock Trust argues are preclusive of the PSC's July 29, 2013 order. MCR 7.208(A) states that after a claim of appeal has been filed or leave to appeal has been granted, the

trial-level tribunal "may not set aside or amend the judgment or order appealed from" except by order of this Court, by stipulation of the parties, after the grant of a preliminary injunction, or as otherwise provided by law. Murdock Trust suggests that the beginning of the appeal process thus forever cuts off the original tribunal's authority to take action in the case, except as noted. We disagree, because MCR 7.208 only applies during the pendency of an appeal and does not bar postappellate action. See *Hill v City of Warren*, 276 Mich App 299, 307; 740 NW2d 706 (2007) ("[F]iling a claim of appeal only prevents the trial court from amending its orders while the appeal is pending, not after remand."), in turn citing *Wilson v Gen Motors Corp*, 183 Mich App 21, 41-42; 454 NW2d 405 (1990); see also *Bass v Combs*, 238 Mich App 16, 24-25; 604 NW2d 727 (1999), overruled in part on other grounds *Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 628; 752 NW2d 37 (2008). We therefore hold that MCR 7.208 does not preclude the PSC from taking the actions set forth in its July 29, 2013 order.

Next, Rule 460.17403 authorizes a petition for rehearing after a decision or order of the PSC, but only "within 30 days after service of the decision or order . . . unless otherwise specified by statute." To the extent that this rule operates as a vehicle for the PSC to clarify one of its orders, it obviously could not do so here because the 30-day limitation was long expired before the instant controversy arose. However, the PSC did not rely on this rule in rendering its decision clarifying its original order. Moreover, the unavailability of this rule because of its time limitation does not itself deprive the PSC of authority where it otherwise may exist.

Finally, Rule 460.17401(1) states that a "proceeding may be reopened for the purpose of receiving further

evidence when a reopening is necessary for the development of a full and complete record or there has been a change in conditions of fact or law such that the public interest requires the reopening of the proceeding." According to subrule (2), such action may be taken by "the presiding officer, upon his or her own motion or upon motion of any party," but only "before the date for the filing of exceptions to a proposal for decision or, if provided for, replies to exceptions." After that date, "the commission may reopen a proceeding upon its own motion or motion of any party," but only "until the expiration of the statutory time period for filing a petition for rehearing[.]" *Id.* Thus, because the time for filing exceptions (or replies to exceptions) and petitioning for rehearing had passed, it appears that this rule was not available to permit the PSC to reopen the contested case.[4]

Indeed, no party invoked this rule or otherwise asked the PSC to reopen the previous proceeding concerning the siting certificate. ITC initially sought an ex parte clarification from the PSC of its February 25, 2011 order's provision for minor deviation in the transmission line route. Murdock Trust disputed the PSC's authority to address the issue short of opening a new contested case. Murdock Trust further contends that in the context of a new contested case it would have been

---

[4] We note that the PSC has interpreted this rule as barring motions for reopening a contested proceeding pursuant to Rule 460.17401(1) if they are untimely under Rule 460.17401(2). See, e.g., *In re Consumers Energy Co*, unpublished order of the Michigan Public Service Commission, entered October 24, 2006 (Case No. U-14150); *In re Application for a Certificate of Public Convenience and Necessity to Construct and Operate the DeWitt Tie-Line*, unpublished order of the Michigan Public Service Commission, entered May 20, 2008 (Case No. U-14421). While not binding on this Court, an administrative agency's interpretation of its own rule is entitled to deference. *In re Complaint of Consumers Energy Co*, 255 Mich App 496, 503-504; 660 NW2d 785 (2003).

subject to all the procedural protections, including discovery, applicable to an adversarial proceeding. Indeed, Murdock Trust served discovery demands on ITC in May 2013, to which ITC objected on the ground that the case remained closed. Murdock Trust then moved the PSC to suspend briefing to await discovery. The PSC in its July 29, 2013 order declared the motion to suspend briefing moot, thus signaling that it was satisfied to decide the controversy at hand without recourse to the additional procedure requested by Murdock Trust. Even assuming that a new contested case should have been opened, Murdock Trust has not specified to this Court how the lack of further discovery in this matter prejudiced its position before the PSC and constituted a denial of due process. We note that "[i]t is well settled that parties to judicial or quasi-judicial proceedings, including administrative proceedings, are not entitled to discovery as a matter of constitutional right." *In re Del Rio*, 400 Mich 665, 687 n 7; 256 NW2d 727 (1977) (emphasis omitted).

We further hold that the PSC was not obligated to open a new contested case. Rather, a contested case proceeding "shall be held when required by statute and may be held when the commission so directs." Mich Admin Code, R 460.17301(1). The PSC "shall conduct a proceeding on *the application for an expedited siting certificate as a contested case . . . .*" MCL 460.1153(2) (emphasis added). Thus, the PSC was not statutorily obligated to open a new contested case in response to a motion made in relation to its order in a previous contested case concerning a previously approved expedited siting certificate.

Giving due deference to the PSC, we therefore conclude that the PSC did not abuse its discretion in deciding the matter before it without opening a new

contested case. *In re MCI Telecom Complaint*, 460 Mich at 427. The PSC allowed the parties to submit briefs, affidavits, and exhibits. The PSC also stated in an order that it would allow oral arguments if it determined that further development of the record was necessary. Within its discretion, it subsequently determined that oral arguments were unnecessary. The above-cited rules do not divest the PSC of the authority to interpret its February 25, 2011 order. See, e.g., Mich Admin Code, R 460.17103(1) ("In areas not addressed by these rules, the presiding officer may rely on appropriate provisions of the currently effective Michigan court rules."); see also MCR 2.612(A)(1) ("Clerical mistakes in . . . orders . . . and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party and after notice, if the court orders it."). Further, the PSC, "in any proceeding which may now be pending before it or which shall hereafter be brought before it, shall have full power and authority to grant rehearings and to alter, amend or modify its findings and orders." MCL 460.351.

On the record before this Court, we also find no abuse of discretion in the PSC's interpretation of its February 25, 2011 order, which noted the project manager's caveat that "descriptions of the proposed and alternate routes are expected to be subject to minor revisions as engineering, design economist surveys, utility locates, and land owner negotiations proceed." The PSC specifically ruled in its July 29, 2013 order that ITC's proposed modification of the easement was "within the scope of minor adjustments allowed for in the February 25, 2011 order in this proceeding." The PSC has thus determined that the adjustment is "minor" in the context of the overall 140-mile transmission route, within the meaning of the February 25, 2011

order. Murdock Trust does not contest the merits of the PSC's holding. We accordingly find no error.

Finally, we do not find persuasive Murdock Trust's argument that the PSC has impermissibly delegated legislative authority to ITC. Specifically, Murdock Trust argues that whereas the PSC's February 25, 2011 order "was not clear" about whether ITC could modify to the approved route, the PSC's July 29, 2013 order "unequivocally determined" that ITC could make modifications if ITC deemed them "minor," and thereby impermissibly delegated legislative authority to ITC. We conclude, to the contrary, that the PSC's February 25, 2011 order approving the proposed route expressly contemplated that it would be subject to "minor revisions." Moreover, the PSC's July 29, 2013 order does not authorize ITC to deviate whenever and to whatever extent it wishes; it merely approves ITC's proposed deviation in this instance. Nothing in the July 29, 2013 PSC order grants ITC authority beyond that which may be reflected in the PSC's February 25, 2011 order, nor does its approval of the particular deviation at issue in this case constitute a determination regarding any other or future deviation, nor does it preclude such a deviation from becoming the subject of future proceedings before the PSC or the circuit court.

### V. CONCLUSION

We hold that Murdock Trust has failed to demonstrate that the notice provided to landowners (which Murdock Trust concedes satisfies the pertinent statutory requirements) denied it due process of law or otherwise caused it to suffer prejudice in the proceedings below. We further hold that the PSC had jurisdiction over the matter in controversy, and properly acted pursuant to the circuit court's request to exercise

primary jurisdiction in this case. Further, we hold that the PSC did not err in issuing its July 29, 2013 order, thereby modifying the previously approved transmission line route for the Thumb Loop Project as set forth therein. Finally, we hold that the PSC's July 29, 2013 order was not an impermissible delegation of legislative authority.

Affirmed.

SERVITTO, P.J., and SAWYER, J., concurred with BOONSTRA, J.